UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANTONIO PEREZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:13-CV-860 SNLJ-NAB |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Antonio A. Perez's ("Perez") application for disability insurance benefits under Title II of the Social Security Act ("SSA"), 42 U.S.C. § 423. Perez alleged disability due to depression, anxiety, agoraphobia[1], constant tremors in his arms and legs, uncontrollable bowel movements, and pain. (Tr. 175.) This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). [Doc. 5.] For the reasons set forth below, the undersigned recommends that the Administrative Law Judge's ("ALJ") decision be affirmed.

**I.    Background**

On July 15, 2011, Perez filed an application for a period of disability and disability insurance benefits, with an alleged onset date of February 1, 2011. (Tr. 145-146, 181.) The

---

[1] Agoraphobia is "marked, or intense fear or anxiety triggered by real or anticipated exposure to a wide range of situations," including using public transportation; being in open spaces; being in closed spaces; standing in line or being in a crowd; or being outside of the home alone. Diagnostic and Statistical Manual of Mental Disorders 218 (5[h] ed. 2013) ("DSM-V"). "When experiencing fear and anxiety cued by such situations, individuals typically experience thoughts that something terrible might happen." *Id.* "Individuals typically believe that escape from such situations may might be difficult … or that help might be unavailable. *Id.*

Social Security Administration denied Perez's application and he filed a timely request for a hearing before an ALJ on September 23, 2011. (Tr. 69-75.) The Social Security Administration granted Perez's request and a hearing took place on September 12, 2012. (Tr. 30-60.) Perez and vocational expert ("VE") Delores Gonzalez testified at the administrative hearing. Perez was represented by counsel. On December 21, 2012, that ALJ issued a written decision affirming the denial of benefits. (Tr. 12-25.) On March 15, 2013, the Appeals Council denied Perez's request for review of the ALJ's decision. (Tr. 1-7.) The decision of the ALJ thus stands as the final decision of the Commissioner. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000). Perez brought this action for judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g) on May 6, 2013. [Doc. 1.] Perez filed a Brief in Support of Motion for Summary Judgment on July 31, 2013[2]. [Doc. 12.] The Commissioner filed a Brief in Support of the Answer on October 30, 2013. [Doc. 17.] Perez filed a Reply Brief in Support of Motion for Summary Judgment on November 20, 2013. [Doc. 20.]

## II.     Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of

---

[2] Plaintiff titled his pleadings as a Motion and Reply "in Support of Motion for Summary Judgment." In accordance with the Court's Case Management Order of May 5, 2013 [Doc. 5.], Federal Rule of Civil Procedure 56, and Local Rule 9.02, the undersigned will construe Plaintiff's pleadings as a Brief and Reply in Support of Complaint.

impairments that significantly limits his or her ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix to the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfies all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

This Court reviews decisions of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). Therefore, even if this Court finds that there is a preponderance of evidence against the weight of the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler,* 733 F.2d 65, 68 (8th Cir. 1984). An administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion. *Gwathney v. Chater,* 1043, 1045 (8th Cir. 1997).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

> (1) The findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physician;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare,* 623 F.2d 523, 527 (8th Cir. 1980).

## III. ALJ Decision

First, the ALJ determined that Perez met the insured status requirements of the Social Security Act through June 30, 2015 and he has not engaged in substantial gainful activity since February 1, 2011, the alleged onset date of disability. (Tr. 14.) Second, the ALJ found that Perez had the severe combination of a history of bilateral knee surgeries, back pain, and lateral epicondylitis[3]. (Tr. 14.) Third, the ALJ determined that Perez did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15.) He also determined that Perez had the residual functional capacity ("RFC") to perform the full range of light work. (Tr. 17.) Fourth, the ALJ found that Perez was capable of performing his past relevant work as a customer service worker and other jobs that exist in significant numbers in the national economy.

---

[3] Epicondylitis is the "inflammation of an epicondyle", which is a projection from a long bone near the articular extremity above or upon the condyle also known as the knuckle of any joint. Stedman's Medical Dictionary 397, 603 (27th ed. 2000).

(Tr. 23-24.) Finally, the ALJ concluded that Perez has not been under a disability, as defined in the Social Security Act from February 1, 2011, through the date of the decision. (Tr. 24.)

**IV.    Discussion**

The following is a summary of relevant evidence before the ALJ.

    **A.    Administrative Hearing**

        **1.    Perez's Testimony**

Perez testified that at the time of the hearing he was 43 years old and he completed high school. (Tr. 34.) Perez had previously worked as a clerk at a gas station, a department manager at Home Depot, and a customer service manager at Wal-Mart. (Tr. 34-36.) Perez stated that his last job at Wal-Mart ended, because his short-term disability benefits ended. (Tr. 36-37.) His health problems, at the time of the hearing, included anxiety attacks, Bell's palsy[4], agoraphobia, knee and back pain, and depression. (Tr. 39-41.) He had been hospitalized for a fall, the Bell's palsy, and anxiety. (Tr. 40.)

Perez testified that he has had anxiety for ten years, but it worsened towards the end of his employment with Wal-Mart. (Tr. 40.) Panic attacks cause Perez to start shaking when he is around people and does not know his surroundings or what is going on. (Tr. 42.) The panic attacks happen spontaneously and can last from five to thirty minutes. (Tr. 42-43.) Perez said that he is anxious about leaving his apartment. (Tr. 48.) During the day, Perez stated that he sleeps, watches TV, and pets his cat. (Tr. 45, 51.) He microwaves all of his meals and only grocery shops at night when there is less traffic. (Tr. 45-46.) Perez's anxiety also causes him to have diarrhea and vomiting. (Tr. 52-53.)

---

[4] Bell's Palsy is "paralysis, usually unilateral, of the facial muscles, caused by dysfunction of the 7th cranial nerve; probably due to a viral infection; usually demyelinating in type." Stedman's Medical Dictionary 1301 (27th ed. 2000).

Perez stated that if he worked he would need three to five unscheduled breaks of fifteen to thirty minutes. (Tr. 53.) Perez testified that he no longer drives because he has seizures. (Tr. 46-47.) His last seizure occurred on May 7, 2012. (Tr. 47.) Perez also stated that he had problems with memory and concentration and he was off task eighty percent of the time, because of his symptoms. (Tr. 54-55.) He sleeps a lot, but tosses and turns while sleeping. (Tr. 55.) He is unable to stand for more than a few minutes to half of an hour. (Tr. 56.)

### 2. VE Delores Gonzalez

VE Delores Gonzalez testified that people with panic attacks and depression leading up to agoraphobia have decreased energy, sleep disturbances, inability to interact appropriately with others, pervasive loss of interest in almost all activities, memory and/or concentration problems, and an inability to cope with stress. (Tr. 57.) She also stated they do not complete tasks and have a problems showing up reliably on a daily basis. (Tr. 57.) It is possible that they have limited insight into what's going on at work, problems interacting with people, possible recurrent obsessions or compulsion. (Tr. 57-58.)

VE Gonzalez testified that it is possible panic attacks could be disruptive in the workplace. (Tr. 58.) She also testified that if Perez was able to control his anxiety and depression with medication and therapy and had the ability to perform jobs with simple instructions, in a low stress environment without a lot of social interaction that was between light to medium exertional level, he could perform jobs such as housekeeping cleaner, bench assembly, mail sorter, and hand presser. She testified that if Perez had to take between two to five unscheduled breaks per day due to symptoms of anxiety there would be no jobs available. (Tr. 59-60.) If the ALJ credited Perez's testimony that he would have problems showing up for work or needed to leave early, he lacked focus because of panic attacks, needed to avoid

interaction with the public and co-workers, and anger problems caused him to lash out, there would be no jobs available in a competitive setting. (Tr. 59.)

### B. Medical Record

#### 1. Dr. Eric Johnson

Dr. Eric Johnson treated Perez for fatigue, vision and hearing loss, arm and back pain, sinus drainage, stress, Bell's Palsy, vomiting, depression, and increased anxiety between October 2010 and June 2011. (Tr. 243-258.) Dr. Johnson's treatment notes are nearly indecipherable, but the notes indicate that Johnson diagnosed Perez with anxiety disorder not otherwise specified, dysthymic disorder, and major depressive disorder. *Id.* Using a checklist, Dr. Johnson indicated a generally normal physical examination except tremors and some postural problems were noted. (Tr. 244, 246, 250, 252, 254.) Dr. Johnson noted that Perez had normal mood and affect and judgment. (Tr. 244, 246, 248, 250, 252, 254, 256.) On October 26, 2010, a MRI of the brain showed no abnormalities of the seventh or eighth cranial nerves and no evidence of infarction, intracerebral mass, or extracerebral fluid collection. (Tr. 257-258.)

#### 2. Dr. Politte[5]

Perez visited Dr. Politte between June and October 2011 for treatment of panic attacks. (Tr. 273-279.) At his initial visit, Dr. Politte noted that Perez was taking Xanax and Zoloft prescribed by Dr. Johnson for depression. (Tr. 275.) Dr. Politte also noted that Perez had fidgety motor activity, anxious mood and affect, and a clear speech and thought patterns. (Tr. 276.) During his visits, Perez reported that he could not sleep, his uncle died, and he was denied long term disability and social security disability. (Tr. 278-279.)

---

[5] Dr. Politte's first name was not included in the record.

### 3. Dr. Perris J. Monrow

Dr. Perris Monrow, a psychologist, began treating Perez on December 27, 2011. (Tr. 289.) At the first visit, Dr. Monrow noted that Perez had hesitant speech, an angry mood, and blunted affect. (Tr. 289.) Dr. Monrow also noted that Perez's thought process was tangential, but his concentration, memory, and impulse control was fair. (Tr. 289.) Dr. Monrow opined that Perez had a current global assessment functioning score[6] ("GAF") of 52. (Tr. 289.) A score of 52 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. DSM-IV-TR at 34.

On December 28, 2011, Dr. Monrow completed a Family and Medical Leave Act ("FMLA") form for Perez. (Tr. 290-293.) Dr. Monrow indicated that Perez's condition commenced in March 2011 and he noted that the condition had a probable duration of one year, if treated. (Tr. 292.) Dr. Monrow wrote that Perez was "not able to cope with any stress" and diagnosed him with panic disorder with agoraphobia. (Tr. 293.) Dr. Monrow stated that Perez would be unable to work until March 31, 2012. (Tr. 293.)

On February 7, 2012, Dr. Monrow completed a form labeled, "Depressive Disorder." (Tr. 280-283.) Dr. Monrow indicated that Perez had all of the symptoms on the form including anhedonia[7], appetite disturbance, sleep disturbance, psychomotor agitation[8] or retardation[9], decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, hallucinations, delusions, or paranoid thinking, and manic syndrome. (Tr. 280-281.) He also

---

[6] Global Assessment Functioning score is a "clinician's judgment of the individual's overall level of functioning. Diagnostic and Statistical Manual of Mental Disorders-Text Revision 32 (4th ed. 2000) ("DSM-IV-TR").
[7] Anhedonia is "lack of enjoyment from, engagement in, or energy for life's experiences; deficits in the capacity to feel pleasure and take interest in things." DSM-V at 817.
[8] Psychomotor agitation is "excessive motor activity associated with a feeling of inner tension. The activity is usually nonproductive and repetitive and consists of behaviors such as pacing, fidgeting, wringing of the hands, pulling of clothes, and inability to sit still." DSM-V at 827.
[9] Psychomotor retardation is "visible generalized slowing of movements and speech." DSM-V at 827.

indicated that Perez's manic syndrome was characterized by pressure of speech[10], flight of ideas[11], inflated self-esteem, decreased need to sleep, easy distractability, involvement in activities that have a high probability of consequences which are not recognized, and hallucinations, delusions, or paranoid thinking. (Tr. 281.) Dr. Monrow also indicated that Perez suffered from bipolar syndrome with a history of episodic periods. (Tr. 281.) Dr. Monrow indicated that Perez suffered from mild limitations[12] in daily living and marked limitations in social functioning, concentration, persistence, or pace, and experienced extreme episodes of deterioration or decompensation in work or work-like setting, which caused him to withdraw from the situation. (Tr. 282.)

On April 26, 2012, Perez visited Dr. Monrow for a routine visit. (Tr. 288.) Dr. Monrow described Perez as angry, hostile, and depressed. (Tr. 288.) Dr. Monrow indicated that Perez's psychomotor activity was agitated, his speech was pressured, his mood was angry, and his affect was labile and not congruent to the situation. (Tr. 288.) Dr. Monrow also noted that Perez's attitude was uncooperative, his thought process was mildly circumstantial, and his impulse control was poor. (Tr. 288.) Dr. Monrow assessed him with a GAF score of 52. (Tr. 288.)

On June 11, 2012, Perez visited Dr. Monrow for a routine visit. (Tr. 287.) Dr. Monrow noted that Perez had slow speech, depressed mood, and a flat affect. (Tr. 287.) He also noted that Perez had fair concentration, memory, impulse control, and progress. (Tr. 287.) Dr. Monrow wrote that Perez was depressed and his situation was not improving, because his lawyers were not helping him, his roommate was partying too much, bills were piling up and no

---

[10] Pressure of speech is "speech that is increased in amount, accelerated, and difficult or impossible to interrupt. Usually it is loud and emphatic. Frequently the person talks without any social stimulation and may continue to talk even though no one is listening." DSM-V at 827.

[11] "Flight of ideas is "a nearly continuous flow of accelerated speech with abrupt changes from topic to topic that are usually based on understandable associations, distracting stimuli, or plays on words." DSM-V at 821.

[12] The form indicated that mild limitations did not affect the ability to function. Marked impairments seriously affected the ability to function independently, appropriately, and effectively. Extreme impairments were severe impairments on the ability to function. (Tr. 282.)

money was coming in, he had no work, and no SSI. (Tr. 287.) Dr. Monrow also indicated that Perez was currently using Xanax and Zoloft. (Tr. 287.) Dr. Monrow assessed him with a GAF score of 52. (Tr. 287.)

On June 12, 2012, Dr. Monrow completed a clinical evaluation of Perez. (Tr. 286.) Dr. Monrow indicated that the evaluation included dates from December 27, 2011 to June 2, 2012. Dr. Monrow noted that Perez presented with "major worry, concern, fear, panic attacks, agoraphobia, shakes, and tremors. (Tr. 286.) Perez also reported disorganized thoughts, disturbed sleep, fatigue, and a recent seizure. (Tr. 286.) Dr. Monrow diagnosed him with panic disorder with agoraphobia and severe recurrent non-psychotic major depression. (Tr. 286.) Dr. Monrow recommended that Perez "not return to work at this time. Patient not ready to return to work at this time." (Tr. 286.) He wrote that Perez was currently taking Xanax and Zoloft. (Tr. 286.) Dr. Monrow also noted that Perez's prognosis was good. (Tr. 286.) Dr. Monrow assessed him with a GAF score of 52. (Tr. 286.)

On the same date, Dr. Monrow completed a Mental Medical Source Statement of Ability to do Work-Related Activities ("MSS"). (Tr. 284-85.) In the MSS, Dr. Monrow opined that Perez had a slight limitation in understanding and remembering simple instructions and moderate limitations in carrying out short, simple instructions; understanding and remembering detailed instructions; interacting appropriately with the public and interacting appropriately with co-workers. (Tr. 285.) Dr. Monrow also opined that Perez had marked limitations in carrying out detailed instructions; making judgments on simple work-related decisions; interacting appropriately with supervisors; and responding appropriately to work pressures in a usual work setting. (Tr. 284-285.) Dr. Monrow then opined that Perez had an extreme limitation in responding appropriately to changes in a routine work setting. (Tr. 285.)

On September 10, 2012, Dr. Monrow completed another clinical evaluation of Perez. (Tr. 306.) The evaluation was substantially similar to the evaluation completed on June 12, 2012. Dr. Monrow diagnosed Perez with panic disorder with agoraphobia and severe recurrent non-psychotic major depression. (Tr. 306.) Dr. Monrow wrote that Perez was "not fit to return to work at this time. Patient not ready to return to work at this time." (Tr. 306.) Dr. Monrow also noted that Perez's prognosis was good. (Tr. 306.) Dr. Monrow assessed him with a GAF score of 52. (Tr. 306.)

### 4. Dr. Kyle DeVore

On September 15, 2011, Dr. Kyle DeVore completed a Psychiatric Review Technique and Mental RFC Assessment regarding Perez. (Tr. 259-272.) Upon review of Perez's medical records, Dr. DeVore diagnosed Perez with major depressive disorder and anxiety. (Tr. 262-263.) Dr. DeVore opined that Perez had no restriction in activities of daily living or any repeated episodes of decompensation. (Tr. 267.) He opined that Perez had moderate difficulties in maintaining social functioning and maintaining concentration, persistence, or pace. (Tr. 267.) Dr. DeVore wrote that Perez's statements and allegations appear to be fully credible and he was capable of performing simple related work. (Tr. 269.)

Dr. DeVore opined that Perez was moderately limited in the ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, accept instructions and respond appropriately to criticism from supervisors, and get along with co-workers or peers without distracting them or exhibiting behavioral extremes. (Tr. 270-271.) Dr. Devore also stated that Perez "remains capable of at least simple work tasks and would benefit from no public contact." (Tr. 212.)

### 5. Dr. Alan H. Morris

Dr. Alan H. Morris completed a physical consultative examination of Perez on October 10, 2012. (Tr. 313-323.) Dr. Morris diagnosed Perez with thoracic back pain, bilaterial arthoscopic surgery with anterior cruciate ligament laxity in the right knee, and lateral epicondylitis in the elbows. (Tr. 315.) Dr. Morris's clinical examination results indicated that Perez would be able to perform light work. (Tr. 316-323.)

### 6. Dr. Kimberly Buffkins

Dr. Kimberly Buffkins completed a mental consultative examination of Perez on October 10, 2012. (Tr. 326-332.) Dr. Buffkins diagnosed Perez with depressive disorder not otherwise specified and anxiety disorder. (Tr. 329.) She assessed Perez with a GAF score of 65. (Tr. 329.) A GAF score of 65 indicates some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships. DSM-IV-TR at 34. Dr. Buffkins opined that Perez's prognosis was fair and appropriate interventions could enhance his ability to maximize his potential. (Tr. 329.) In a Mental Medical Source Statement, Dr. Buffkins determined that Perez was mildly limited in the ability to make judgment on complex work-related decisions and respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 330-331.) She found no other limitations.

## V. Discussion

Perez states the ALJ erred in concluding that Perez's mental impairments were not severe and failing to include limitations caused by his mental impairments in the RFC determination. The Commissioner contends that the ALJ's failure to find Perez had severe mental impairments

is not a cause for remand, because under the regulations an ALJ considers the combined effects of all a claimant's impairments in evaluating the RFC and the ALJ did so in this case.

### A. Severity of Mental Impairments

To be considered severe, an impairment must *significantly* limit a claimant's ability to do basic work activities. *See* 20 C.F.R § 404.1520(c) (emphasis added). "Step two [of the five-step] evaluation states that a claimant is not disabled if his impairments are not 'severe.'" *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (citing *Simmons v. Massanari,* 264 F.3d 751, 754). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Id.* at 707. "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two." *Id.* (citing *Page v. Astrue,* 484 F.3d at 1043). "It is the claimant's burden to establish that his impairment or combination of impairments are severe. *Id.* (citing *Mittlestedt v. Apfel,* 204 F.3d 847, 852 (8th Cir.2000)). "Severity is not an onerous requirement for the claimant to meet, . . . but it is also not a toothless standard." *Id.* at 708. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). Examples of basic work activities include "(1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b).

In this case, the ALJ determined that Perez's mental impairments were non-severe and did not limit him in any significant way. Perez contends that the record establishes that his

impairments cause significant work-related limitations. Perez also contends that the ALJ erred when he failed to acknowledge the opinion of Dr. DeVore, who concluded he had a severe impairment and improperly rejected the opinions of his treating physician.

The undersigned finds that the ALJ's determination of the severity of Perez's mental impairment as non-severe was supported by substantial evidence. Although the ALJ did not mention Dr. DeVore's opinion, it does not mean that he did not consider it. Dr. DeVore indicated that Perez had the medically determinable impairments of major depressive disorder and anxiety. (Tr. 262-263.) Dr. DeVore wrote that Perez appeared to be fully credible and was capable of performing simple related work. (Tr. 269.) He found that Perez was moderately limited in maintaining social functioning and maintaining concentration, persistence, and pace. (Tr. 267.)

Dr. DeVore's opinion does not constitute substantial evidence that Perez has a severe impairment when considered alone or in combination with the other medical evidence in the record. "Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). "Moreover, an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Id.* (highly unlikely that ALJ did not consider and reject physician's opinion when ALJ made specific references to other findings set forth in physician's notes).

Second, the ALJ did not err in giving little weight to Dr. Monrow's opinions. Generally, a treating physician's opinion is given controlling weight, but is not inherently entitled to it. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as a whole." *Leckenby v. Astrue*,

487 F.3d 626, 632 (8th Cir. 2007). A treating physician's opinion will be given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(c); SSR 96-2p; *see also Hacker*, 459 F.3d at 937. "Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." *Prosch v. Apfel,* 201 F.3d 1010, 1013 (8th Cir. 2000). "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007). "The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if [the conclusions] are inconsistent with the record as a whole." *Id.* The ALJ "is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Wagner v. Astrue*, 499 F.3d at 848. "The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if [the conclusions] are inconsistent with the record as a whole." *Id.*

In this case, the ALJ stated that little weight was given to Dr. Monrow's opinions, because they were inconsistent with his own treatment notes and other evidence in the record. (Tr. 22.) Specifically, the ALJ noted that despite Dr. Monrow's statements in his treatment notes that Perez could not manage stress, was afraid to leave home, and could not interact with co-workers and supervisors was contradicted by Perez's activities of daily living. (Tr. 22.) The ALJ also noted that Dr. Monrow consistently gave Perez GAF scores that indicated only moderate impairments in functioning, but Dr. Monrow's opinions indicated that Perez had

15

marked limitations. (Tr. 22.) Greater weight is given to medical opinions that have relevant evidence to support the opinion and that are consistent with the record as a whole. 20 C.F.R. § 404.1527(c).

Also, the ALJ did not err in giving significant weight to Dr. Buffkin's opinion or giving more weight to her opinion than the weight given to Dr. Monrow.

> It is well established that an ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other more substantial medical evidence contained within the record. Moreover, an ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence.

*Wagner*, 499 F.3d at 849. "As a general matter, the report of a consulting physician who examined a claimant once does not constitute substantial evidence upon the record as a whole, especially when contradicted by the evaluation of the claimant's treating physician." *Id.* There are two exceptions to this general rule: (1) where other medical assessments are supported by better or more thorough medical evidence, or (2) where a treating physician renders inconsistent opinions that undermine the credibility of such opinions. *Id.* Because Dr. Buffkins's opinion is consistent with other evidence in the record, the ALJ did not err in granting her opinion significant weight.

### B. RFC Determination

Next, Perez claims that the ALJ should have included limitations regarding his mental impairments in the RFC determination. The RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(a). The RFC is a function-by-function assessment of an individual's

ability to do work related activities on a regular and continuing basis.[13]  SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).  It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of his limitations.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).  An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record.  *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).  In making a disability determination, the ALJ shall "always consider the medical opinions in the case record together with the rest of the relevant evidence in the record."  20 C.F.R. § 404.1527(b); *see also Heino v. Astrue*, 578 F.3d 873, 879 (8th Cir. 2009).

Based on a review of the evidence in the record as a whole, the Court finds that substantial evidence supports the ALJ's RFC determination that Perez can perform light work.  A review of the record demonstrates that Perez has some restrictions in his functioning and ability to perform work related activities, however, he did not carry his burden to prove a more restrictive RFC determination.  *See Pearsall*, 274 F.3d at 1217 (it is the claimant's burden, not the Social Security Commissioner's burden, to prove the claimant's RFC).  The undersigned acknowledges that there is evidence supporting his claim that limitations regarding his mental impairments should be included in the RFC determination.  But, "[a]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion."  *Id.*

## IV. Conclusion

The Court finds that substantial evidence supports the ALJ's decision as a whole.  As noted earlier, the ALJ's decision should be affirmed "if it is supported by substantial evidence, which does not require a preponderance of the evidence but only 'enough that a reasonable

---

[13] A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.  SSR 96-8p, 1996 WL 374184, at *1.

17

person would find it adequate to support the decision,' and the Commissioner applied the correct legal standards." *Turpin v. Colvin*, 750 F.3d 989, 992-993 (8th Cir. 2014) (internal citations omitted). The Court cannot reverse merely because substantial evidence also exists that would support a contrary outcome, or because the court would have decided the case differently. *Id.* at 993. "If, after reviewing the record, the Court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009). Therefore, the undersigned recommends that the Commissioner's decision be affirmed.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the request for relief in Plaintiff's Complaint and Brief in Support of Complaint be **DENIED**. [Docs. 1, 12.]

**IT IS FURTHER RECOMMENDED** that judgment be entered in favor of the Defendant in a separate order.

The parties are advised that they have fourteen (14) days in which to file written objections to these recommendations pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. *See Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

Dated this 21st day of August, 2014.

    /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE